# Exhibit 7

 **Clark Hill**

> # RECEIVED
> *By CBP FPF Detroit at 4:57 pm, Jun 27, 2021*

R. Kevin Williams
T (312) 985-5907
F (312) 985-5956
Email:KWilliams@ClarkHill.com

Clark Hill
130 E. Randolph Street, Suite 3900
Chicago, Illinois 60601
T (312) 985-5900
F (312) 985-5999

June 24, 2021

BY EMAIL

Port Director
U.S. Customs and Border Protection
Fines, Penalties & Forfeitures Office
477 Michigan Avenue, Room 200
Detroit, MI 48226

Attn:   Mr. Shawn Bissonette, FP&F Officer
        Ms. Habooba Ready, Paralegal Specialist

        Re:   ASHH, Inc. - Seizure Case No. 2020-3807-00080501

Dear Mr. Bissonette and Ms. Ready:

We represent ASHH, Inc. ("ASHH") of Oak Park, Michigan in this case. ASHH is the owner and importer of the goods.

The seized merchandise consists of the following goods:

| Product Description | Quantity |
| --- | --- |
| Ooze Vaporizer | 1,536 |
| Ooze Slim Twist w/ Smart USB | 18,000 |

The seizure notice alleges that these products are drug paraphernalia, as defined in 21 U.S.C.A. § 863 ("Section 863"), and, as such, are subject to seizure and forfeitures under 19 USCA 1595a(c). We submit that these products are not subject to forfeiture pursuant to 21 U.S.C.A. § 863(f) and, alternatively, are not drug paraphernalia as defined in Section 863. Accordingly, the seizure should be cancelled, and the goods released.

I.      <u>Statutory Framework</u>

        a.   <u>Section 863</u>

Section 863(a)(3) makes it "unlawful for any person … to import or export drug paraphernalia." The term "drug paraphernalia" is defined in 21 U.S.C.A. § 863(d) to mean:

> [A]ny equipment, product, or material of any kind which is primarily intended or designed for use in … ingesting, inhaling or otherwise introducing into the human

**clarkhill.com**

CLARKHILL\66299\425039\263309678.v1-6/24/21

June 24, 2021
Page 2

body a controlled substance .... It also includes items primarily intended or designed for use in ingesting, inhaling or otherwise introducing marijuana ... into the human body ....

Section 863(d) lists several items as examples of drug paraphernalia. Section 863(e) then lists several factors to consider when determining whether an item is drug paraphernalia. These factors are:

1)      instructions, oral or written, provided with the item concerning its use;

2)      descriptive materials accompanying the item which explain or depict its use;

3)      national or local advertising concerning its use;

4)      the manner in which the item is displayed for sale;

5)      whether the owner, or anyone in control of the item, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

6)      direct or circumstantial evidence of sales of the item(s) to the total sales of the business enterprise;

7)      the existence and scope of legitimate uses of the item in the community; and

8)      expert testimony concerning its use.

Finally, Section 863(f) provides two exemptions from the statute's prohibitions.

This section shall not apply to—

(1) any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items; or

(2) any item that, in the normal lawful course of business, is imported, exported, transported, or sold through the mail or by any other means, and traditionally intended for use with tobacco products, including any pipe, paper, or accessory.

Section 863 was enacted by Congress in the Mail Order Drug Paraphernalia Control Act of 1986 ("Paraphernalia Control Act" or "Act"). The exemption enacted in Section 863(f) was not in the versions of the Act introduced in Congress but did contain exemptions for medical and scientific needs (House version) and for certain professions (Senate version). The legislative history of the Act is silent on why the final version was adopted, but one commentator has suggested that "Congress likely intended the authorization exemption to permit states broad discretion to authorize paraphernalia-related activities as they saw fit."[1]

---

[1] See The Authorization Continuum: Investigating the Meaning "Authorization" Through The Lens of the Controlled Substances Act, 72 Vand. L. Rev. 1335 (2019) at 1346-47.

CLARKHILL\66299\425039\263309678.v1-6/24/21

June 24, 2021
Page 3

### b. Legalization of Hemp

Congress changed the legal status of CBD and other hemp derived product in the Agriculture Improvement Act of 2018. Pub. L. 115-334. Section 12619 of the law added an exclusion from the definition of marijuana found in 21 U.S.C.A. § 802(16). The exclusion states that marijuana does not include hemp as defined 7 U.S.C.A. § 1639o.

The definition of hemp in 7 U.S.C.A. § 1639o was also added in the 2018 legislation and provides:

> The term "hemp" means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.

The exclusion of hemp products with a delta-9 tetrahydrocannabinol ("THC") concentration of not more than 0.3 percent on a dry weight basis from the definition of marijuana in the Controlled Substance Act (21 U.S.C.A. § 801 et. seq.) also impacts the definition of drug paraphernalia in Section 863(d). That is, equipment primarily intended or designed for use to ingest or inhale legal hemp products is not drug paraphernalia because it is not used to introduce "marijuana, cocaine, hashish, hashish oil, PCP, methamphetamine, or amphetamines into the human body."

### c. State Law

While the possession and use of marijuana is still illegal under federal law, it is currently legal at various levels in most U.S. states and territories. The recreational use of marijuana is fully legal in 19 states and the District of Columbia and has been decriminalized in two states where recreational use remains illegal. The medical use of marijuana or CBD oil is legal in 44 states and the District of Columbia.

Michigan, where ASHH is located and where the seized products were imported, has fully legalized the recreational use of marijuana. The Michigan Medical Marihuana[2] Act ("MMMA") is a voter initiative approved the voter of the State of Michigan on November 4, 2008. This law took effect on December 4, 2008 and defined the "medical use of marihuana" to mean:

> the **acquisition, possession,** cultivation, manufacture, extraction, use, internal possession, **delivery, transfer, or transportation** of marihuana, marihuana-infused products, or **paraphernalia** to the administration of marihuana to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition.

MCL § 333.26423(h) (emphasis added). Section 4 of the MMMA further provides that:

---

[2] While the Michigan and other statutes spell marihuana with an "h", the spelling of the word with a "j" "predominates and should be preferred." *Garner's Modern American Usage, Third Edition*, Bryan A. Garner, 2009 at 526. Except where otherwise spelled in a specific statute, this petition spells the word with a "j".

**clarkhill.com**

CLARKHILL\66299\425039\263309678.v1-6/24/21

June 24, 2021
Page 4

> Any marihuana, **marihuana paraphernalia,** or licit property that is possessed, owned, or used in connection with the medical use of marihuana, as allowed under this act, or acts incidental to such use, shall not be seized or forfeited.

MCL § 333.26424(i) (emphasis added).

In the November 2018 Michigan election, Michigan voters approved a ballot initiative legalizing the recreational use and possession of marijuana for adults 21 years of age and older. MCL § 333.27951, et seq. This initiative, known as the Michigan Regulation and Taxation of Marihuana Act ("MRTMA"), provides that:

> Notwithstanding any other law or provision of this act, except as otherwise provided in section 4 of this act, the use, manufacture, possession, and purchase of marihuana accessories by a person 21 years of age or older and **the distribution or sale of marihuana accessories** to a person 21 years of age or older is authorized, is not unlawful, is not an offense, **is not grounds for seizing or forfeiting property,** is not grounds for arrest, prosecution, or penalty in any manner, and is not grounds to deny any other right or privilege.

MCL § 333.27955(2) (emphasis added).

The definition of "marihuana accessories" in MRTMA closely parallels the Federal definition of drug paraphernalia in 21 U.S.C. § 863(d) and defines "marihuana accessories" to mean:

> any equipment, product, material, or combination of equipment, products, or materials, that is specifically designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, ingesting, inhaling, or otherwise introducing marihuana into the human body.

MCL § 333.27953(f).

II.     Discussion

a.  Seizure of Marihuana Accessories or Drug Parphernalia Imported into Michigan

The structure of the federal and Michigan statutes is clear: The MRTMA authorizes conduct (the distribution and sale of marijuana accessories) that is prohibited by Section 863 (the importation of drug paraphernalia).

The principles of statutory construction require The MRTMA explicitly authorizes the distribution and sale of marijuana accessories. Such distribution and sale is "not unlawful, is not an offense, [and] is not grounds for seizing or forfeiting property." The Michigan authorization clearly invokes the exemption in section 863(f)(1) of the Paraphernalia Control Act. That is, the Michigan law formally legalizes federally prohibited paraphernalia activities and blocks the consequences of the Paraphernalia Control Act because the prohibitions of Section 863 do not

**clarkhill.com**

CLARKHILL\66299\425039\263309678.v1-6/24/21

June 24, 2021
Page 5

apply "to any person authorized by local, State, or Federal law to manufacture, possess, or distribute" drug paraphernalia.

The interplay of the MRTMA and Section 863 leads to a clear conclusion. The MRTMA authorizes the distribution and sale of marijuana accessories in Michigan. Section 863(f)(1) provides that the prohibitions of Section 863 do not apply to any person authorized by State law to possess or distribute marijuana paraphernalia. Thus, Section 863 does not authorize CBP to seize the products imported by ASHH into the State of Michigan.

Any other interpretation violates the settled rules of statutory interpretation that statutes must "be construed in such fashion that every word has some operative effect" (*United States v. Nordic Vill., Inc.,* 503 U.S. 30, 36 (1992)) and to "avoid statutory interpretations that render provisions superfluous" (*United States v. Anderson,* 15 F.3d 278, 283 (2d Cir. 1994)).

Accordingly, CBP's seizure of these goods violates section 863(f)(1) and is unlawful. The seizure must be cancelled and the goods released.

b. The Legalization of Hemp and Marijuana Products

The factors listed in section 863(e) requires consideration of eight factors when considering whether a product constitutes drug paraphernalia. We submit that the application of these factors to the products at issue and in light of the changing regulatory framework governing the use of hemp and marijuana lead to the conclusion that the products are not drug paraphernalia.

These factors and the relevant information are:

1)      Instructions, oral or written, provided with the item concerning its use. The written instructions provided by ASHH for use of the seized merchandise relate solely to the use of the products with CBD or other hemp products that are now legal for use throughout the United States.

2)      Descriptive materials accompanying the item which explain or depict its use. The descriptive materials accompanying the products are the same as those in factor 1.

3)      National or local advertising concerning its use. ASHH advertises its products on Instagram and on the ASHH website (https://www.oozelife.com). The products are advertised for sale to convenience stores, gas stations, smoke shops and medical marijuana/CBD dispensaries. This advertising does not advocate the use of the products for the consumption of illegal products.

4)      The manner in which the item is displayed for sale. The wholesale packaging for the seized products does not indicate that the products are for use with marijuana in states where it remains illegal.

5)      Whether the owner, or anyone in control of the item, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products. ASHH is a legitimate supplier of these products to retail establishments for use with CBD and hemp products in accordance with the legalization of the use of these products by the Federal government and also in states where marijuana is fully legal.

**clarkhill.com**

CLARKHILL\66299\425039\263309678.v1-6/24/21

June 24, 2021
Page 6

6)      Direct or circumstantial evidence of sales of the item(s) to the total sales of the business enterprise. In the six-month period from September 1, 2019 through February 29, 2020, the sales of the seized merchandise accounted for 7% of ASHH's total revenue. As discussed below in Factor 7, the states where marijuana usage is fully legal or for medicinal purposes account for more than 86% of the total U.S. population. If the usage of the seized products for consumption of legal CBD is factored into this percentage, it becomes clear that sales of the seized products is legal to all of the U.S. population.

7)      The existence and scope of legitimate uses of the item in the community. The use of the seized products is widespread and legitimate throughout the United States for the consumption of hemp products. Their use is also legitimate in the 29 states and the District of Columbia where the use of marijuana is fully legal or for medicinal purposes. The population of the states where the use of marijuana is fully legal or for medicinal purposes is more than 296,000,000. This accounts for more than 86% of the total U.S. population.

8)      Expert testimony concerning the use of the products. ASHH is unaware of any expert testimony regarding the use of the seized products.

This information clearly establishes that the seized items, which may have at one time been drug paraphernalia, are not drug paraphernalia under Section 863 due to the legalization of hemp products such as CBD and the changing landscape of marijuana legalization in the United States. Accordingly, the seizure should be cancelled and the products released.

III.      Conclusion

Section 863 does not authorize CBP to seize the subject products and the seizure is therefore unlawful. The seizure must be cancelled, and the goods released.

Enclosed is the Signed Elections of Proceedings Form.

Respectfully submitted,

CLARK HILL

R. Kevin Williams

RKW:rkw