**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

ASHH, INC.,

        Plaintiff,

v.                                    Case No. 21-11210

UNITED STATES OF AMERICA, *et al.*,

        Defendants.

_____/

### OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Plaintiff ASHH, Inc. brings this action against the United States of America, United States Customs and Border Protection ("CBP"), three officers of the CBP, and ten unidentified current and former agents of CBP. Plaintiff asserts that Defendants, on four occasions, illegally seized and continue to detain Plaintiff's property. (ECF No. 1.) Plaintiff alleges that Defendants improperly characterized Plaintiff's products as "drug paraphernalia" under relevant federal and state law and accordingly seek the return of the property and damages. (*Id.*)

Before the court is Defendants' motion to dismiss. (ECF No. 14.) Defendants contend that Plaintiff's complaint must be dismissed either because the court lacks jurisdiction or the complaint otherwise fails to state a claim. Plaintiff filed a response (ECF No. 16), and Defendant replied. (ECF No. 17.) After a review of the parties' briefing and a status conference with the parties regarding the pertinent issues, the court does not find a hearing to be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons set forth below, the court will grant Defendants' motion and dismiss the case.

## I. BACKGROUND

The following facts are either alleged in Plaintiff's complaint or agreed upon by the parties. In considering a motion to dismiss, the court accepts Plaintiff's factual allegations as true but makes no overt finding as to truth or falsity. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is a Michigan corporation that manufactures and distributes products in the CBD and hemp markets, including "vaporizers, rolling papers, and packaging supplies." (ECF No. 1, PageID.2.) Among their numerous products are a "glass bowl for smoking hemp-derived CBD," a "durable and versatile hand pipe," a "four piece grinding device for breaking down hemp-derived CBD and industrial hemp flower," a "glass blunt," and "hybrid devices" that include bongs and "quartz bangers." (*See* ECF No. 1-2, PageID.37-44, 46.) Plaintiff, on four occasions, attempted to import a variety of its products into the United States; however, these shipments were seized by CBP after the government's determination that the products constituted "drug paraphernalia." (ECF No. 1, PageID.8-13.)

On November 27, 2019, CBP seized Plaintiff's property in International Falls, Minnesota. (*Id.*, PageID.8.) On March 31, 2020, Plaintiff responded to this seizure "[b]y letter dated March 31, 2020, by filing a petition against the seizure stating that the products were not drug paraphernalia and therefore the seizure should be cancelled, and the goods released." (*Id.*, PageID.9.) Plaintiff's letter elaborated and averred that the seized items—the total value of which were appraised at $467,372.00—do not qualify as "drug paraphernalia" as defined in 21 U.S.C. § 863(d). (ECF No. 1-1,

PageID.24; ECF No. 1-2.) Plaintiff alleges that this petition was timely submitted and remains outstanding. (ECF No. 1, PageID.10.)

On May 10, 2021, CBP notified Plaintiff that, on April 13, 2021, CBP seized another shipment of Plaintiff's products in Romulus, Michigan. (*Id.*, PageID.11.) Similarly, on May 17, 2021, CBP informed Plaintiff that a third shipment had been seized on May 6, 2021; the majority of items seized in the May 6 shipment were "Lithium-ion batteries, which are describe[d] as the 18000 Ooze Slim Twist w/ Smart USB." (*Id.*, PageID.12.) Plaintiff's complaint states that, as to both of April 13 and May 6 seizures, it "is in the process of responding to the *Notice of Seizure and Information to Claimants* and will do so in a timely manner." (*Id.*) The shipments were valued at $465,426.00 and $105,360.00, respectively. (ECF No. 1-3, PageID.55; ECF No. 1-4, PageID.63.) Plaintiff submitted its completed Election of Proceedings form as to the May 6 seizure on June 24, 2021; Plaintiff opted to proceed administratively and file a petition for remission as it did following the November 27 seizure. (ECF No. 14-1, PageID.140; ECF Nos. 14-7, 14-8.)

Finally, Plaintiff alleges that CBP seized a fourth shipment on May 10, 2021—three containers carrying thousands of its products. (ECF No. 1, PageID.13.) However, at the time it filed the instant complaint in late May 2021, Plaintiff had "not received the formal seizure notice for these containers." (*Id.*) Plaintiff later received its Notice of Seizure as to this shipment on approximately June 21, 2021. (ECF No. 14-1, PageID.140; ECF No. 14-9, PageID.177.) Plaintiff again proceeded administratively by filing a petition pursuant to 19 U.S.C. § 1618. (ECF Nos. 14-10, 14-11.)

Plaintiff brings a six-count complaint. Counts I through IV invoke Federal Rule of Criminal Procedure 41(g) and request the return of property for each of the seized shipments. (*Id.*, PageID.14-16.) Plaintiff claims that its property was not properly classified as drug paraphernalia or is otherwise exempt from detention and seizure. Count V requests review of CBP's agency action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, arguing Defendants have exceeded their authority and that their actions are otherwise arbitrary and capricious. (*Id.*, PageID.16-18.) Finally, Count VI avers that Defendants' seizures constitute a taking and seeks just compensation. (*Id.*, PageID.19.)

## II. STANDARD

Defendants' motion to dismiss implicates the standards of both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### A.  Rule 12(b)(1)

Rule 12(b)(1) permits parties to seek dismissal of claims for "lack of subject-matter jurisdiction." Such motions "fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (1994). For a facial attack, which concerns the legal sufficiency of the complaint, "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id.* (internal citation omitted).

For an attack against "the factual existence of subject matter jurisdiction[,] . . . no presumptive truthfulness applies to the factual allegations and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (internal citation omitted). "[A] trial court has wide discretion to allow affidavits,

documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat. Life Ins. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). The "[p]laintiff bears the burden of establishing that subject matter jurisdiction exists," and factual findings made by the court to "are reviewed for clear error." *Cartwright v. Garner*, 751 F.3d 752, 760 (6th Cir. 2014).

Here, Defendants purport initially to make a "facial attack," but they have presented evidence "to provide context" to the court. (ECF No. 14, PageID.123.) They ask, alternatively, to construe the motion as a factual attack insofar as the court finds that the additional evidence is necessary to determine its jurisdiction. (*Id.*) Given the time that has passed since the filing of the complaint—and the significance of the documents before the court—the court will construe the motion as a factual attack.

### B. Rule 12(b)(6)

Under Rule 12(b)(6), a party can move to dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing motions under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "To survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining plausibility is "a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense." *Id.* at 679. The plaintiff must

present "more than labels and conclusions." *Twombly*, 550 U.S. at 545. "[A] formulaic

recitation of a cause of action's elements will not do." *Id.*

When reviewing a motion to dismiss, the court "may not consider matters beyond

the complaint." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009).

However, the court may consider "documents incorporated into the complaint by

reference . . . and matters of which a court may take judicial notice." *Tellabs, Inc. v.

Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider "a

document that is not formally incorporated by reference or attached to a complaint"

when "[the] document is referred to in the complaint and is central to the plaintiff's

claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

### III. DISCUSSION

Defendants advance their motion to dismiss on various grounds. As to Counts I

through IV, Plaintiff's 41(g) claims, they argue that the court lacks jurisdiction. (ECF No.

14, PageID.124-28.) As to Count V's APA claim, Defendants move to dismiss because

there are other adequate remedies and the agency actions at issue are not "final." (*Id.*,

PageID.128-33.) Finally, Defendants maintain that Count VI, Plaintiff's takings claim,

must be dismissed for either lack of jurisdiction or failure to state a claim. (*Id.*,

PageID.133-37.)

### A. Rule 41(g) Claims (Counts I–IV)

Under Federal Rule of Criminal Procedure 41(g), an individual "aggrieved by an

unlawful search and seizure of property or by the deprivation of property may move for

the property's return." The Sixth Circuit recognizes that, in the absence of criminal

proceedings, a party may bring an independent civil action in equity for the return of the property. *See United States v. Duncan*, 918 F.2d 647, 653 (6th Cir. 1990) (citing *United States v. Young*, 878 F.2d 383 (6th Cir. 1989)) (noting that under Rule 41(g), a party's "request for return of the seized property is essentially a civil equitable proceeding"); *United States v. Chandler*, No. 20-MC-50816, 2020 WL 4431144, at *1 (E.D. Mich. July 31, 2020) (Edmunds, J.) (citing *United States v. Savage*, 99 F. App'x 583, 584 (6th Cir. 2004)) (recognizing the availability of an equitable action in the absence of criminal proceeding). The thrust of Defendants' argument for dismissal is that because Plaintiff's Rule 41(g) action is brought as an equitable proceeding, Plaintiff's claims cannot be maintained where there is an adequate remedy at law. Defendants point to the comprehensive statutory scheme governing customs law, seizures, and forfeitures— particularly 19 U.S.C. §§ 1602–1618, as well as associated agency regulations.[1] (ECF No. 14, PageID.124.)

After CBP seized Plaintiff's property, Plaintiff had primarily two options, as the "Notice of Seizure and Information to Claimants" explained.[2] *See United States v. Von*

---

[1]     The government also argues that venue is improper as to Count I, which requests the return of property seized on November 27 in Minnesota. (ECF No. 14, PageID.126-27.) It is true that a Rule 41(g) "motion must be filed in the district where the property was seized." Fed. R. Crim. P. 41(g). However, this action has no connection to criminal proceedings. Instead, it is a distinct civil action brought in equity, detached from any criminal investigation or indictment; whether Rule 41(g)'s express language actually controls here is therefore questionable. The parties have not briefed this particular issue. In fact, Plaintiff provides no substantive argument as to the propriety of venue whatsoever. (ECF No. 16, PageID.211 (arguing only that, *if* venue is improper, the court should transfer the action).) Although the court is inclined to find that the action should be brought in the district where the property is seized, the court need not make this determination in light of the court's finding below that Plaintiff failed to pursue its adequate remedy at law.

[2]     Plaintiff's other major option included the opportunity to submit an offer in compromise to CBP pursuant to 19 U.S.C. § 1617 and 19 C.F.R. §§ 161.5, 171.31.

*Neumann*, 474 U.S. 242, 244 (1986) ("After seizure of an article by the United States

Customs Service, a claimant to it has essentially two options. He may pursue an

administrative remedy under 19 U.S.C.A. § 1618 . . . or he may challenge the seizure in

a judicial forfeiture action initiated by the Government."). Plaintiff could "file a petition . . .

within 30 days" with the CBP "seeking remission of the forfeiture" pursuant to 19 U.S.C.

§ 1618 and 19 C.F.R. §§ 171.11(a), 171.12. (ECF No. 1-1, PageID.25.) This petition, as

described in the Notice of Seizure, effectively requests "administrative processing" of

the case by CBP and asks the agency to "refrain from beginning forfeiture proceedings

while [the] petition is pending." (*Id.*) The notice also explains that if the petitioner is

dissatisfied with the outcome of the petition, further administrative review is available.

(*Id.*) *See* 19 C.F.R. § 171.61 (explaining the process for filing a supplemental petition if

"the petitioner is not satisfied with a decision of the deciding official on an original

petition for relief").

Plaintiff was offered the opportunity to contest the seizure in a judicial forfeiture

action initiated by the government. To do so, the Notice of Seizure instructed Plaintiff to

"submit to CBP . . . a claim and cost bond in the penal sum of $5,000 or 10 percent of

the value of the claimed property, whichever is less." (*Id.*, PageID.27.) Upon filing a

claim and bond, the case is "referred promptly to the appropriate U.S. Attorney for the

institution of judicial proceedings in Federal court to forfeit the seized property in

accordance with 19 U.S.C. § 1608 and 19 C.F.R. § 162.47." (*Id.*) Upon receipt of the

case, the U.S. Attorney "must either seek civil judicial forfeiture of the goods in federal

---

(ECF No. 1-1, PageID.26.) Otherwise, Plaintiff could have chosen to abandon the
property or take no action at all, either of which could result in forfeiture. (*Id.*,
PageID.25-26.)

court or decline to do so (in which case the goods are returned to the claimant)." *LKQ Corp. v. United States*, No. 18-CV-1562, 2019 WL 3304708, at *2 (D.D.C. July 23, 2019) (citing 19 U.S.C. § 1608). And, critically, even if a party originally chose to file a petition for remission under 19 U.S.C. § 1618, the importer "at any time" has the ability to opt out of petition process "and elect to challenge the seizure in a judicial forfeiture proceeding instead" by following these procedures. *See id.*

"Under standard equity doctrine, where there is an adequate remedy at law it must be pursued." *Shaw v. United States*, 891 F.2d 602, 603 (6th Cir. 1989). Here, Plaintiff's remedy for its four Rule 41(g) claims would be to reclaim its seized property. Although Plaintiff decided to file petitions pursuant to 19 U.S.C. § 1618 to invoke administrative processing as to the seizures at issue,[3] it has effectively ignored its adequate remedy at law: it still has the ability, pursuant to 19 U.S.C. § 1608 and 19 C.F.R. § 162.47, to file a claim and bond with CBP, in which case "CBP's consideration of [the] petition[s] will stop and the case will be sent to the U.S. Attorney's Office for court action." (ECF No. 1-3, PageID.60.) From there, the government must "immediately . . . inquire into the facts of case[]" and "cause the proper proceedings to be commenced and prosecuted, without delay." *LKQ Corp.*, 2019 WL 3304708, at *2 (quoting 19 U.S.C. § 1604). There is a process under the customs laws by which an importer can challenge a seizure in a judicial forfeiture proceeding. The court sees no reason to exercise equitable jurisdiction where the "right to elect judicial over administrative forfeiture through the filing of a claim and cost bond . . . clearly makes

---

[3]     Since the filing of Plaintiff's complaint, the products seized on April 13 have been administratively forfeited. Although Plaintiff alleged notice of the seizure and represented it would timely submit its Election of Proceedings form, Plaintiff ultimately failed to make a timely decision. (ECF No. 14-3, PageID.152; ECF Nos. 14-4, 14-5.)

available to a claimant invoking the remedy an appropriate forum in which to test the legality of the contested seizure." *See Matter of Ninety-One Thousand Dollars in U.S. Currency*, 715 F. Supp. 423, 434 (D.R.I. 1989); *Floyd v. United States*, 860 F.2d 999, 1003 (10th Cir. 1988). ("A claimant may invoke § 1608 to end the administrative forfeiture and force the institution of judicial proceedings. The legality of a seizure may be tested in the judicial forfeiture."). Indeed, Plaintiff in its briefing appears to complain that judicial forfeiture proceedings have not been initiated; yet, Plaintiff itself has the power to request those proceedings through the filing of a claim and cost bond, after which the government must take prompt action to adjudicate its rights.[4] *See Gonzalez v. United States Customs & Border Prot.*, No. 21-CV-1558 TWR, 2022 WL 687149, at *4 (S.D. Cal. Mar. 8, 2022) (dismissing complaint where the plaintiff sought return of his vehicle but there was no indication that the claimant ever "filed a claim and bond pursuant to 19 U.S.C. § 1608"); *see also* 19 U.S.C. §§ 1603-04.

Crucially, the government concedes that this remedy is still available to Plaintiff. (ECF No. 17, PageID.269 ("And ASHH can even now file a claim under § 1608 to

---

[4]       The court reads Plaintiff's complaint and briefing as requesting the court, in equity, to order the return of the seized goods because they were improperly seized; the complaint focuses on the merits of its statutory arguments. To the extent that Plaintiff complains that Defendants have refused to timely initiate forfeiture proceedings or answer its petitions for remission in violation of its rights, its position does not square with (1) their specific request via the Notice of Seizure and "Election of Proceedings" form for the CBP to "*refrain* from beginning forfeiture proceedings" or "administrative forfeiture proceedings" (ECF No. 1-3, PageID.56 (emphasis added)); (2) the absence of allegations in its complaint demonstrating any sort of *request for initiation* of judicial forfeiture proceedings under the customs laws—directed at either CBP or the court; and (3) the Supreme Court's holding that a claimant's property interest does not entitle him "to a speedy answer to his remission petition." *Von Neumann*, 474 U.S. at 249. Plaintiff did not address any of these collateral issues in its briefing, but to the extent it seeks quicker judicial intervention, the prudent course would be to proceed under § 1608 by filing a claim and bond.

prompt judicial proceedings; a party cannot invoke a court's equitable power when he holds the keys to the legal remedy in his hands.").) And similarly situated claimants have opted out of the administrative process and instead pursued their remedy at law through judicial forfeiture proceedings under § 1608. *See LKQ Corp.*, 2019 WL 3304708, at *2 (providing background and noting that after "months went by without a ruling from CBP" on their administrative petitions, the "plaintiffs withdrew some of their petitions and elected to pursue the judicial forfeiture option instead"). Plaintiff proffers no explanation as to why it continues to refuse pursuing the remedy it seeks via the statutory procedures noted by the government; it cannot, on the one hand, complain about the absence of judicial forfeiture proceedings when, on the other hand, it has both requested (via its petitions) that the government forgo instituting forfeiture proceedings and taken no affirmative action to initiate judicial forfeiture.[5] Simply "allowing [Plaintiff] to proceed in the manner [it] has chosen would permit [Plaintiff] to circumvent civil forfeiture procedure . . . [because] it would enable [Plaintiff] to avoid posting a cost bond as required by 19 U.S.C. § 1608." *United States v. One 1988 Mercedes Benz, VIN: WDBBA48D5JA087263*, 719 F. Supp. 595, 599 (E.D. Mich. 1989). All claimants would be able to avoid Congress's requirements by filing an equitable action. There is a

---

[5]  Cases acknowledging the propriety a Rule 41(g) action generally do so only after there has been a specific request for a judicial forfeiture proceeding, that is, after filing a claim and paying bond under § 1608, and after the government has delayed filing a forfeiture action contrary to the statutory requirements to do so promptly. *See, e.g. LKQ Corp.*, 2019 WL 3304708, at *2 (noting that "[t]wo statutory provisions govern the timing of the judicial forfeiture process, *once requested*" (emphasis added)). Plaintiff's case is distinguishable in this regard. *See, e.g.*, *Serrano v. United States Customs & Border Prot.*, 975 F.3d 488, 498-99 (5th Cir. 2020) (explaining that, because the claimant had filed a claim and bond requiring the case to be referred promptly to the United States Attorney for a judicial action, and where the government has failed to take immediate action, a 41(g) action would be proper).

"significant incentive for [Plaintiff] to avoid the statute's requirements" due to the financial implications of the requirement to post bond, but it cannot be permitted to sidestep Congress's express, comprehensive procedures in favor of an "unwarranted extension" of the court's equitable jurisdiction.[6] *See id.* (citing 19 U.S.C. § 1608); *Linarez v. United States Dep't of Justice*, 2 F.3d 208, 212 (7th Cir. 1993) ("The district court in this case . . . was without jurisdiction to resolve challenges to the seizure and proposed forfeiture. The [agency] divested the court of jurisdiction over the forfeiture by mailing and publishing a notice of its intent to forfeit the currency. Had Linarez desired to litigate his challenges to the seizure and forfeiture in district court, he could have done so by availing himself of the administrative procedures first.").

Thus, Plaintiff apparently ignores its ability to obtain the remedy at law available to it and instead maintains that "there is no forfeiture action providing Plaintiff another remedy at law." (ECF No. 16, PageID.211.) But Plaintiff's complaint clearly establishes that it received notice of how it can promptly obtain the specific remedy it seeks, and the court agrees with Defendants that this forecloses Plaintiff's ability to bring an equitable action. In *Shaw v. United States*, for example, Shaw filed a motion seeking the return of $45,008 seized by federal agents while she was on a plane at an airport. 891 F.2d at 603. The district court issued an order directing the government to show cause why her property should not be returned, after which the government instituted civil forfeiture proceedings. *Id.* The district court then denied Shaw's motion "on the grounds that there was a specific remedy provided for at law which she could pursue." *Id.* The Sixth Circuit agreed with the district court that "[u]nder standard equity doctrine, where there is an

---

[6]     A party may seek waiver of the bond requirement. *See* 19 C.F.R. § 162.47(e). Plaintiff has not alleged whether it has sought such a waiver.

adequate remedy at law it must be pursued." *Id.* But, in *Shaw*, the claimant "ignored" statutory procedures and "sought to use the equitable remedy rather than pursuing the legal remedy."[7] *Id.; accord Matter of Sixty Seven Thousand Four Hundred Seventy Dollars ($67,470.00)*, 901 F.2d 1540, 1545 (11th Cir. 1990) (finding the district court properly declined equitable jurisdiction because, after receiving a Notice of Seizure letter, the claimant ignored the requirement to "to file a claim of ownership and bond" and instead "chose the second option" of requesting remission).

The *Shaw* court, in its analysis, distinguished the Tenth Circuit's *Floyd* case in which a claimant sought the return of property seized by the government. In *Floyd*, the Tenth Circuit acknowledged that the claimant would have had an adequate remedy at law under § 1608; however, the movant in *Floyd* "could not have availed himself of the appropriate legal remedies" because the statutory notice of seizure and intent to forfeit "was not published until after the [41(g)] hearing." *See Floyd*, 860 F.2d at 1004. Indeed, the *Shaw* court explained that the government in *Floyd* was required to "publish a notice of intent to seize property," and "[o]nly after receiving that notice is a plaintiff required to

---

[7]     The *Shaw* court cited both 19 U.S.C. §§ 1608 and 1618 as a "specific remedy provided for at law" that could foreclose equitable jurisdiction. *See Shaw*, 891 F.2d at 603; *see also El Mourabit v. United States*, No. CV 08-112-DLB, 2009 WL 10711886, at *3 (E.D. Ky. Feb. 24, 2009) (citing *Shaw*, 891 F.3d at 604) ("Where the party chose to avail himself of the remission petition, courts generally have no power to review that decision. Once the administrative process has begun, the individual is required to follow the statutory procedures governing the process under 19 U.S.C. § 1618."). Some courts have rejected the notion that § 1618, which essentially assumes the validity of an underlying seizure but requests a pardon provides an adequate remedy at law. *See, e.g.*, *Floyd v. United States*, 860 F.2d 999, 1004 (10th Cir. 1988); *see also Ibarra v. United States*, 120 F.3d 472, 475 (4th Cir. 1997) (quoting *United States v. Vega*, 72 F.3d 507, 514 (7th Cir. 1995)) ("A petition for remission or mitigation 'does not serve to contest the forfeiture, but rather is a request for an executive pardon of the property based on the petitioner's innocence.'"). The court need not definitively determine whether § 1618 provides the adequate remedy for Plaintiff in this situation because, as the government notes, an *in rem* forfeiture action under § 1608 is still available.

follow the statutory procedures." *Shaw*, 891 F.2d at 604. Thus, the Sixth Circuit held that because "Shaw received official notice when the DEA mailed a Notice of Seizure to her," she "was given proper notice," and therefore "required to file a claim and cost bond with the DEA." *Id.* (citing 19 U.S.C. § 1608). The Sixth Circuit summarized, "[b]ecause notice was proper and Shaw failed to pursue the remedy at law, the District Court properly denied her motion for return of property under Rule 41(e)."[8] *Id.* Here, Plaintiff has alleged actual notice of the adequate remedy at law available to it, so it cannot proceed in equity.

Plaintiff also cites *$8,050.00 in U.S. Currency v. United States*, 307 F. Supp. 2d 922 (N.D. Ohio 2004) ("*Alston*") in support of its position. In that case, the claimant Alston filed a Rule 41(g) motion "prior to receiving notice that the DEA was instituting an administrative forfeiture proceeding as to the seized property." *Id.* at 926. The *Alston* court noted that "[b]ecause no administrative forfeiture proceeding was pending at that time, the filing of that Motion was entirely proper." *Id.* But the analysis did not end there. The government subsequently provided Alston with notice that "it was instituting procedures to administratively forfeit the seized cash." *Id.* at 924. The notice stated that the cash was seized because it was property used or acquired in violation of the Controlled Substances Act and further "detailed the steps Alston needed to take in order

---

[8]     Plaintiff points to language in *Shaw* stating that "[o]nce the government initiated civil proceedings against [Shaw], she was required to follow the statutory procedures set out in 19 U.S.C. §§ 1608 and 1618." *Id.* Plaintiff maintains that, based on this statement, an "actual, civil forfeiture action filed by the government" must exist before the statutory procedures have to be followed. However, this language—evinced in part by the absence of the word "only" or its equivalent—indicates that the existence of a docketed civil forfeiture proceeding is sufficient, but not necessary, to provide a claimant with an adequate remedy. Indeed, a close reading of *Shaw* and *Floyd* supports the conclusion that once a claimant *has notice of the statutory remedies* available to it, it must abide by them rather than proceeding in equity.

to have his property returned." *Id.* This included a statement to Alston informing him of his right to "petition the DEA for return of the property or [his] interest in the property (remission or mitigation)," and his option to "contest the seizure and forfeiture of the property in Federal court," just as Defendants informed Plaintiff in this case. *See id.* at 924 n.2. Thus, the *Alston* court found that the claimant had notice of the administrative forfeiture proceedings and the process as to how to contest any forfeiture. *Id.* at 927. The court held that there was no reason to find the administrative forfeiture proceeding was an inadequate remedy, and it was irrelevant that the Rule 41(g) motion was filed first. *Id.* (citing *Floyd*, 860 F.2d at 1004). It found, given the "comprehensive administrative procedures" providing Alston an opportunity to reclaim the property seized by the government—and a lack of any explanation as to why the procedures are inadequate—Alston had an adequate remedy at law and required dismissal of the equitable Rule 41(g) claim. *Id.* Although Plaintiff cites *Alston* in support of its position, its holding does not appear to turn on whether a "formal" forfeiture proceeding is pending at the time a party brings Rule a 41(g) claim; rather, it stands for the proposition that, once a party has notice of an adequate remedy at law, it must pursue that course. *See id.* (refusing to bypass statutory procedures despite the claimant initiating separate legal complaint before any administrative proceedings began).

In summary, Plaintiff cannot advance its equitable claims while it has an adequate remedy at law.[9] It cannot flout the statutory procedures that Congress

---

[9]    The court, in a status conference, solicited additional case law that would aid the court in its determination regarding jurisdiction. Plaintiff submitted a letter pointing to *Root Sciences, LLC v. United States*, 543 F. Supp. 3d 1358, 1362 (Ct. Int'l Trade 2021). Plaintiff notes that the Court of International Trade, which cited 28 U.S.C. § 1356, explained that district courts have "exclusive original jurisdiction of any seizure under any law of the United States." But this does nothing to persuade the court that it has

intended to govern these circumstances—*Shaw* is controlling here. The administrative

process has begun via the seizure and Notice of Seizure, and Plaintiff has alleged that it

had sufficient notice of this process. *See, e.g. Sandoval v. United States*, No. 00 CIV

1259 AGS, 2001 WL 300729, at *4 (S.D.N.Y. Mar. 28, 2001) (collecting cases indicating

that "only the timely filing of a claim and a bond stops the administrative forfeiture

process and provides jurisdiction to the court," even where there are "challenges to the

search and seizure leading to forfeiture"). The court will therefore dismiss Counts I, II,[10]

III, and IV.

---

equitable jurisdiction under these circumstances. In fact, Plaintiff apparently ignores
express language from the Court of International Trade in this case which cuts against
this court's ability to hear an equitable action under the facts before the court—
particularly the holding that, "[t]o *obtain relief from seizure*, the importer may file an
administrative petition pursuant to 19 U.S.C. § 1618 and 19 C.F.R. § 171.1; or file a
claim pursuant to 19 U.S.C. § 1608 and 19 C.F.R. § 162.47, for referral to the U.S.
attorney for the district in which the seizure was made, who shall then institute forfeiture
proceedings." *See id.* (emphasis added).

[10]      Defendants point out that the goods seized on April 13—representing the basis
for Count II—have already been administratively forfeited. The parties have not
addressed the implications of this event, but it appears the court cannot entertain a Rule
41(g) action for this forfeiture. *See, e.g.*, *Armstrong v. United States*, 89 F.3d 832 (6th
Cir. 1996) (holding that, where the plaintiff received notice prior to the DEA's
administrative forfeiture, the plaintiff could "not now seek review of his claim . . . through
a 41(e) motion"). Once goods are administratively forfeited, a district court "lack[s]
jurisdiction to review the forfeiture except for failure to comply with procedural
requirements or to comport with due process." *See United States v. Schinnell*, 80 F.3d
1064, 1069 (5th Cir. 1996); *Cohen-Sanchez v. United States ex rel. Drug Enf't Admin.*,
No. CIV. 11-6578, 2012 WL 1150760, at *5 (D.N.J. Apr. 5, 2012); *McKinney v. DEA*,
580 F. Supp. 2d 1, 3-4 (D.D.C. 2008); *City of Concord v. Robinson*, 914 F. Supp. 2d
696, 713 (M.D.N.C. 2012); *Bautista-Gonzalez v. United States*, No. 5:17-CR-81, 2019
WL 6002303, at *3 (S.D. Tex. June 25, 2019), *report and recommendation adopted*, No.
5:17-CR-81, 2019 WL 6002233 (S.D. Tex. July 22, 2019). Plaintiff alleges that it
received notice in Count II and makes no allegation that the government failed to follow
requisite procedures. Plaintiff wholly failed to timely respond to the Notice of Seizure,
despite being specifically warned that taking no action could result in forfeiture.

**B. APA Claim (Count V)**

After a review of the complaint, it is clear that Count V also warrants dismissal because Plaintiff fails to state a claim under the APA. Under the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. "Section 704's requirement that there be no other 'adequate remedy in court' insures that the APA's general grant of jurisdiction to review agency decisions is not duplicative of more specific statutory procedures for judicial review." *Bangura v. Hansen*, 434 F.3d 487, 501 (6th Cir. 2006) (citing *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)). The focus of a court's inquiry into the existence of an adequate remedy in court is "on available federal court remedies," *see id.*, as the APA "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." *Bowen*, 487 U.S. at 903. "The essential inquiry is whether another statutory scheme of judicial review exists so as to preclude review under the more general provisions of the APA." *See Bangura*, 434 F.3d at 501. (finding that the plaintiff had stated a claim under the APA because the statute at issue "[did] not specifically provide for federal court review"). Additionally, the relief provided by this alternate statutory scheme of judicial review need not provide "relief identical to relief under the APA"; rather, the "court need only be able to provide 'relief of the same genre' to the party seeking redress." *Rimmer v. Holder*, 700 F.3d 246, 262 (6th Cir. 2012) (quoting *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009)).

Plaintiff in this case seeks to contest the seizures, which is precisely what it may do by following the procedures set forth under the customs laws—a comprehensive

statutory scheme exists to provide Plaintiff with a forum to contest the seizures at issue, particularly during *in rem* forfeiture proceedings under 19 U.S.C. § 1608.[11] At least one other court has come to the same conclusion. *See LKQ Corp. v. United States. Dep't of Homeland Sec.*, 369 F. Supp. 3d 577, 585-86 (D. Del. 2019). "Plaintiffs have had an effective remedy as outlined in the judicial forfeiture procedure of the seizure notice from CPB," which requires that "CBP to refer the case to the U.S. Attorney who must either bring an *in rem* forfeiture proceedings against the goods or return the goods to Plaintiffs." *Id.* (citing 19 U.S.C. § 1608). And although Plaintiffs allege that "CPB misunderstands [customs] law," § 1608 provides the judicial remedy that is seeks as it pertains to the seized goods. *Id.* As stated by the court in the District of Delaware, even though "Plaintiffs may not prefer the venue or process by which the judicial forfeiture proceedings would follow is of little moment to the Court, which is bound by the statutory scheme codified in the customs laws and was provided by notice to the Plaintiffs." *Id.* The government indicates that this remedy is still available to Plaintiff, but Plaintiff has not demonstrated any intent to take advantage of the proceedings. (ECF No. 14, PageID.120 ("Under CBP regulations, a party may elect to file a claim before the goods are forfeited, even if the party earlier chose to file a petition."); ECF No. 17, PageID.269.) For these reasons, Plaintiff has not stated a claim under the APA. *Bangura*, 434 F.3d at 500 ("To state a claim for relief under the APA, a plaintiff must

---

[11]     Plaintiff notes that while § 1608 provides for *in rem* actions, "Defendants have instituted no such *in rem* forfeiture actions." (ECF No. 16, PageID.217.) But there is a prerequisite: Plaintiff itself must file a claim and cost bond before the government initiates the proceedings. To the extent Plaintiff relies on the APA as a way to avoid paying bond, it cannot do so.

allege that his or her injury stems from a final agency action for which there is no other adequate remedy in court.").

The government alternatively contends that the specific agency action challenged—the seizure of Plaintiff's goods—does not constitute *final* agency action and is therefore unreviewable. Plaintiff, however, asserts that "CBP's seizure consummates a final agency action," particularly because "[i]n seizing Plaintiff's property and by further determining that Plaintiff's property was seized pursuant to 19 U.S.C. § 1595a(c)(2)(A), 21 U.S.C. § 863(a)(3), 21 and U.S.C. § 863(d), Defendants determined Plaintiff's rights and legal consequences have flowed from that decision." (ECF No. 16, PageID.224-25.) The court disagrees that the seizures represent final agency action.

To be considered a "final agency action," it must meet two requirements:

> First, the challenged action must mark the consummation of the agency's decisionmaking process. This means the action must not be of a merely tentative or interlocutory nature, such that judicial review of the action would disrupt the orderly process of adjudication. Second the challenged action must determine rights and obligations of a party or cause legal consequences. In other words, it must have a sufficiently direct and immediate impact on the aggrieved party and a direct effect on its day-to-day business.

*Berry v. United States Dep't of Labor*, 832 F.3d 627, 633 (6th Cir. 2016) (internal citations omitted). Following the seizure of Plaintiff's products, CBP provided notice and options for challenging the seizure. As the District of Delaware also found, the court agrees that "[u]nder no reasonable interpretation of 'finality' can the seizure of goods, which sets off a codified procedure for forfeiture or petitions, be considered the 'consummation' of an 'agency's decisionmaking process.' Seizures do not determine the rights or obligations of LKQ, nor do legal consequences flow from the decision to seize the goods under the customs laws." *LKQ Corp.*, 369 F. Supp. 3d at 588 (citing *Ocean*

*County Landfill Corp. v. EPA*, 631 F.3d 652, 655 (3d Cir. 2011)). A seizure merely

begins the process of eventually reaching the consummation of the agency's action—a

settlement, forfeiture, or return of the property, for example. Indeed, Plaintiff purported

to take advantage of the administrative petition process as to some seizures. (ECF No.

1, PageID.9, 11-12.) The court agrees with Defendants that "the very purpose of the

petition process that ASHH is already pursuing is to persuade the agency to take a

certain course in making its final decision." (ECF No. 14, PageID.133.) Even after a

decision is made on a petition, there is opportunity for yet further administrative review

on the petition. *Cf. Berry*, 832 F.3d at 633 (finding that agency action marked the "end of

its process" because there "was no opportunity for further administrative review of the

request"). Plaintiff has at least arguably sufficiently alleged that Defendants' actions

have had an immediate impact on its day-to-day business, but the first requirement of

final agency action is still unsatisfied. The agency's seizures therefore cannot be

considered final as Plaintiff contends, and Plaintiff fails to state a claim under the APA.

*See Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 424 (6th Cir. 2016);

*Fund for Animals, Inc. v. United States Bureau of Land Mgmt.*, 460 F.3d 13, 18 n.4

(D.C. Cir. 2006) (explaining that whether there has been reviewable agency action

within the meaning of the APA is a threshold question, but noting that this issue pertains

to a party's failure to state a claim under Rule 12(b)(6), not a lack of subject matter

jurisdiction under Rule 12(b)(1)).

Because Plaintiff's complaint seeking review of CBP's seizures fails to contest final agency action, and because there is another adequate remedy in federal court, the court will dismiss Count V.[12] *See* 5 U.S.C. § 704.

### C. Takings Claim (Count VI)

Plaintiff also alleges, in the alternative, that the government's "detention and seizures . . . amount to an impermissible taking of Plaintiff's property without just compensation." (ECF No. 1, PageID.19.) Plaintiff requests that the court deem the seizures to be "an improper taking of Plaintiff's property without compensation," and accordingly "award Plaintiff appropriate damages resulting from such taking." (*Id.*, PageID.20.) Defendants first argue that the court lacks subject matter jurisdiction to hear this claim. (ECF No. 14, PageID.134.) The court agrees.

"Federal district courts do not have subject matter jurisdiction to consider just-compensation claims for money damages in excess of $10,000 against the United

---

[12]    The court need not definitively determine, as Defendants contend, whether review of CBP's actions is precluded by statute. (ECF No. 14, PageID.128.) But the court notes that there is merit to Defendants' contention, as the customs laws at issue would be rendered meaningless if a claimant could circumvent all relevant procedures and time limits simply by bringing an action under the APA. *Cf. Sterling v. United States*, 749 F. Supp. 1202, 1208 (E.D.N.Y. 1990) (noting there is "substantial merit" to the notion that the statute's requirements of filing a claim and bond "would be rendered meaningless" if a claimant could merely file suit under the APA). Although Plaintiff argues that Defendants' actions are made reviewable by 28 U.S.C. § 1356, which provides that the "district courts shall have original jurisdiction, exclusive of the courts of the States, of any seizure under any law of the United States on land or upon waters not within admiralty and maritime jurisdiction," the court disagrees that Congress's general conferral of subject matter jurisdiction renders the discrete agency action reviewable in the circumstances before the court. Plaintiff cites no cases supporting its conclusion, and such a proposition is doubtful where the Sixth Circuit has noted that § 1356 provides "little if any present utility" and is "more a source of confusion than anything else." *Vector Research., Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 697 n.2 (6th Cir. 1996); *accord* 13D Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3578 (3d ed.).

States." *Brott v. United States*, 858 F.3d 425, 428 (6th Cir. 2017) (explaining the interplay between the Tucker Act and the Little Tucker Act). Instead, the Tucker Act "vests in the Court of Federal Claims *exclusive* jurisdiction to hear such claims." *Id.* (emphasis in original). Plaintiff does not dispute this point, but rather argues only that it is "unable to articulate its damages because Defendants are in exclusive possession and control of the subject goods." (ECF No. 16, PageID.226.) Yet, in determining whether the court may exercise jurisdiction, the court has considered the complaint's exhibits and other evidence before it and has determined that the amount in controversy for the alleged "taking" clearly surpasses $10,000. The value of the first seized shipment was appraised at $467,372.00. (ECF No. 1-1, PageID.24.) The second shipment was nearly the same in value, totaling $465,426.00. (ECF No. 1-3, PageID.55.) The third shipment of seized goods, still, was valued ten times the court's jurisdictional limit for a takings claim; the total value was appraised at $105,360.00. (ECF No. 1-4, PageID.63.) Finally, the value of the shipment seized on May 10 was appraised at nearly $1.5 million. (ECF No. 14-9, PageID.177.) The "just compensation" at issue in this case plainly exceeds the $10,000 threshold; Plaintiff cannot avoid this fact by disingenuously turning a blind eye to the value of the thousands of goods for which it requests compensation. Put simply, the court lacks jurisdiction to hear Plaintiff's taking claim and will dismiss it.

Although Plaintiff asks the court to transfer the action to the Court of Federal Claims, it is clear that Plaintiff has nonetheless failed to state a viable claim under the circumstances. "[F]or the Court [of Federal Claims] to possess jurisdiction over a takings claim, the 'claimant must concede the validity of the government action which is the

basis of the taking claim.'" *See Jackson v. United States*, 143 Fed. Cl. 242, 247 (2019)

(quoting *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802-03 (Fed. Cir. 1993)); *see*

*also Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed. Cir.

1998) ("A compensable taking arises only if the government action in question is

authorized."). Plaintiff's complaint clearly challenges the validity of the seizures, alleging

that Defendants seized its property in violation of federal and state law. (ECF No. 1,

PageID.19.) Thus, dismissal of Count VI is warranted.

## IV. CONCLUSION

In summary, Plaintiff's complaint largely demonstrates that it seeks to circumvent

the statutory procedures available to it. By pursuing its remedy at law, Plaintiff can

contest the government's seizure of Plaintiff's property and, if successful, secure the

return of its products. At the current juncture—where there are petitions for remission

outstanding and apparently no actual requests for the initiation of forfeiture

proceedings—the court is unable to permit its claims to proceed. Its takings claim,

similarly, cannot go forward based on the complaint and its attached exhibits.

Accordingly,

IT IS ORDERED that Defendants' "Motion to Dismiss" (ECF No. 14) is

GRANTED.

IT IS FURTHER ORDERED that Plaintiff's complaint (ECF No. 1) is DISMISSED.


s/Robert H. Cleland                    /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  June 27, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 27, 2022, by electronic and/or ordinary mail.

<u>s/Lisa Wagner                              /</u>
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\21-11210.ASHH.MotionToDismiss.MAZ.3.docx